UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. 21-237 - Civ _____

| | |
|---|---|
| JULIO CESAR MARTINEZ SERNA ) | |
| ) | |
| Plaintiff, ) | |
| ) | **VERIFIED COMPLAINT** |
| v. ) | |
| ) | |
| BAILEY FARMS SOUTH, LLC ) | |
| ) | |
| Defendant. ) | |

## INTRODUCTION

1. In this case Plaintiff is seeking relief from Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §215, and Florida common law of contract for violations of Plaintiff's rights in connection with Plaintiff's employment by Defendant during, and after, the 2020-2021 agricultural season.

2. Defendant violated Plaintiff's rights by terminating his employment in retaliation against Plaintiff for protected activity in breach of the work contract; and other violations. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

3. Plaintiff seeks a temporary restraining order, preliminary and permanent injunction against defendant's unlawful termination, actual and liquidated damages, and declaratory relief.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §§ 1331, and 29 U.S.C. § 217.

1

5. This Court has supplemental jurisdiction over any and all state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims share a common set of operative facts with the federal law claims.

6. This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper because most of the events giving rise to this action occurred in one or more of the counties listed in 28 U.S.C. § 113(a); 28 U.S.C. § 1391(b)(2); 29 U.S.C. § 216(b).

## PARTIES

8. Plaintiff JULIO CESAR MARTINEZ SERNA is a citizen of Mexico who came to Florida in July 30 of 2020 on an H-2A agricultural visa issued pursuant to 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c), and 188(a)(1) to work for Defendant in or around Collier County, Florida, from June 30, 2020 through May 31, 2021.

9. At all times relevant to this Complaint, Plaintiff was employed by Defendant BAILEY FARMS SOUTH, LLC to perform agricultural work in Florida, and Plaintiff performed work for Defendant and Defendant's enterprise that Defendant operated in or around Collier County, Florida, within the meaning of 29 U.S.C. 203(d), 203(g) 203(s)(1)(A), 8 U.S. Code § 1188.

10. Defendant BAILEY FARMS SOUTH, LLC ("Defendant") is a Farm Labor Contractor believed to reside in 13350 BONITA BEACH ROAD, S.E., BONITA SPRINGS, FL 34135 who employed workers in the 2020 and 2021 agricultural seasons under the H-2A visa program.

11. During the 2020-2021 Florida agricultural season, Defendant employed Plaintiff, along with other H-2A workers for more than 18 full-time employees or 500 man-days in the calendar quarter. 29 C.F.R. § 780.305.  *See* Exhibit B: Agricultural Clearance Order No. FL11190861, Form 790A, Page 1, Line 2(a).

12. At all times relevant to this Complaint, Defendant was an "employer" of H-2A workers, as that term is defined in and by the H-2A regulations, 20 C.F.R. § 655.103(b).

13. At all times relevant to this Complaint, Defendant was "engaged in commerce or in the production of goods for commerce" within the scope and meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A), as for each calendar year during that period, employees who handled, sold or otherwise worked on goods or materials that had been moved in or produced for interstate commerce by another person, corporation, or partnership; and annual gross volume of sales made, or business done of not less than $500,000 (exclusive of excise taxes at the retail level that were separately stated).

## THE H-2A PROGRAM

14. The H-2A Program allows foreign nationals to be lawfully admitted with "non-immigrant" status and authorized to work in the United States for a specific employer on a temporary basis. 8 U.S.C. § 1101(H)(ii)(a) (2018).

15. Under the Program, an agricultural employer may hire temporary foreign agricultural workers, commonly known as H-2A workers, if the U.S. Department of Labor. ("U.S. DOL") certifies that: 1) there are insufficient available workers within the United States to perform the job; and that, 2) the employment of aliens will not adversely affect the wages and working conditions of similarly-situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1).

16. A foreign national admitted on an H-2A visa cannot work for any employer except the one listed on his or her visa.

17. Plaintiff's work must be limited to agriculture as defined by federal law, and only temporary or seasonal jobs may be filled.

18. An agricultural employer who wishes to hire H-2A workers must submit a petition to the U.S. DOL, and U.S. DOL may certify the petition for the number of workers requested so long as the employer commits to comply with all applicable laws, regulations, and rules of the H-2A program. *See* 8 U.S.C. §§ 1188 *et seq.*; 20 C.F.R. 655.100 *et seq.*

19. The job order contains "the material terms and conditions of employment," such as provisions of housing, the type of work, and any qualifications for the job required by the employer. *See* 20 C.F.R. § 655.103(b).

20. If a job offer is accepted by an H-2A worker, the job order he was hired on serves as the work contract, unless the employer and worker opt to use a separate written contract.

21. Regardless, if the employer uses a separate work contract or relies on the job order, the work contract must include, at a minimum, all the protections of section 655.122 and must be disclosed to the employee in a language understood by the worker no later than when a worker applies for their visa. *See* 20 C.F.R. § 655.122(q).

22. H-2A employers are required to provide housing for workers who cannot reasonably commute to and from the worksite each day. 20 C.F.R. § 655.122(d)(1).

23. For employees that live in employer-provided housing, the employer is further required to provide either three meals per day or free and convenient cooking facilities that enable the employee to cook his or her own meals. 20 C.F.R. § 655.122(g).

24. Employers that provide three meals per day must state in the job order both that meals will be provided and the cost of the meals, which cannot exceed a daily amount established by U.S. DOL. *See* 20 C.F.R. §§ 655.122(g); 655.173(a).

## STATEMENT OF THE FACTS

*A. Plaintiff's Recruitment by Defendant to Come Work in Florida*

25. Plaintiff learned about the work with Defendant in or about May 28, 2020 through an employee of Defendant that Defendant used to recruit people ("Recruiter"). The Recruiter is believed to be named John J. Black. *See* Exhibit A: Agricultural Clearance Order No. FL11190861, Form 790, Page 1, Section II, Line 3.

26. The Recruiter explained Plaintiff about the nature of the work and that it paid $11.71 an hour. *See* Exhibit B: Agricultural Clearance Order No. FL11190861, Form 790A, Page 1, Line 8(b).

27. The Defendant's agents assisted Plaintiff with the process of obtaining his visa. *See* Exhibit C: H2A Visa.

### B. *Plaintiff's Work for Defendant Bailey Farms South, LLC*

28. Upon information and belief, Plaintiff worked over 36 hours in his first month on the job for Defendant. *See* Exhibit B: Agricultural Clearance Order No. FL11190861, Form 790A, Page 1, Line 6.

29. Most workdays began between 7:00am and ended at 2:00pm. *See* Exhibit B: Agricultural Clearance Order No. FL11190861, Form 790A, Page 1, Line 7.

30. A typical workweek was six days a week. *See* Exhibit B: Agricultural Clearance Order No. FL11190861, Form 790A, Page 1, Line 6.

29. Often Plaintiff would work in multiple fields in a single day.

30. On such days, Defendant transported Plaintiff and his workmates from one field to the next.

31. Towards the end of July, Defendant provided work to Plaintiff harvesting peppers.

5

32. Upon information and belief, Defendant would sometimes have Plaintiff work in one field doing piece-rate work and then transport Plaintiff to another field to do hourly work, during the same workday.

   C. *Defendant's Broken Promise*

33. Incorporated in the work contract by reference is 20 C.F.R. § 655.135 "Assurances and Obligations of H-2A Employers." *See* Exhibit B: Agricultural Clearance Order No. FL11190861, Form 790A, at Section 17 of the attachments under "Other Conditions of Employment, Clarifications, and Assurances."

34. One H-2A regulation that is incorporated into the work contract by reference is the "No Unfair Treatment" provision which forbids the employer from discriminating or otherwise unfairly treating employees who engage in enumerated protected activities. 20 C.F.R. § 655.135(h).

35. The last enumerated protected activity is a catch-all that protects workers from being discriminated against for "exercising or asserting" "any right or protection" of the H-2A program. *See* 20 C.F.R. § 655.135(h)(5).

   D. *Plaintiff's* Direct *Supervisor's Harassment*

36. Plaintiff is a Mexican national employed by the Defendant as a H2A migrant worker. The duration of his employment has a start date of August 1, 2020 and a termination date of April 31, 2021, per his H2A contract and visa. *See* Exhibit C: H2A Visa

37. Plaintiff worked for Defendant's Farm on August 1, 2020 picking peppers in the State of Florida.

38. As a part of the H2A contract, Plaintiff was provided housing which he shared with three or four other workers. *See* Exhibit B: Agricultural Clearance Order No. FL11190861, Form 790A, at Section 1(3), page 5.

39. Plaintiff's direct supervisor is Crew Leader, Jose A. Martinez, aka "El Primo" ("Direct Supervisor"). The Direct Supervisor is overseen by John J. Black, the Recruiter, Registered Agent and Supervisor. *See* Exhibit A: Agricultural Clearance Order No. FL11190861, Form 790, Section II(3)(4)(5) (Recruiter); Exhibit D: March 4, 2021 Annual Report (Registered Agent); and Exhibit E: Letter from Defendant's Counsel, Exhibit 1, pages 3, 4 and 5 (Supervisors).

40. The Direct Supervisor has repeatedly engaged in harassing behavior against the Plaintiff.

41. On February 26, 2020, Plaintiff was standing in line to clock into work, when his Direct Supervisor stood close behind him and patted him on his buttocks.

42. Plaintiff instantly let the Direct Supervisor know that he did not like that type of touching. An argument ensued thereafter, and Plaintiff walked away to begin working in the field picking peppers.

43. Shortly after that argument, Plaintiff's Direct Supervisor told him that he was fired for throwing away too many peppers.

44. Plaintiff was forcibility removed from the work site by the Direct Supervisor and told to move out of the housing that was provided by the employer.

45. The Direct Supervisor completed a Notice of Termination. Exhibit E: Letter from Defendant's Counsel, Exhibit 1, page 6.

46. The Notice of Termination states that the reason for termination is performing the job "bad" (or "mal") and arguing.

47. Plaintiff seeks to be reinstated back to his job, remain in his employer provided housing, paid for wages lost due to the retaliatory wrongful termination, and free from sexual harassment and hostile work environment created by his Supervisor.

## FIRST CAUSE OF ACTION

### Retaliation Against Plaintiff for Objecting to Sexual Harassment

48. Sexual harassment is a form of gender discrimination prohibited under Title VII of the Civil Rights Act. Sexual harassment can include but is not limited to unwelcome sexual advances, requests for sexual favors, hostile verbal or physical conduct that targets someone based on gender, whether sexual overtures are involved.

49. Sexual harassment is defined under two types: Hostile Work Environment, and Quid Pro Quo Harassment. Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986).

50. Hostile work environment occurs when an employer's action or behavior are so inappropriate that they create an abusive work atmosphere; and, the employer's conduct is either severe or pervasive by their physical actions as well as derogatory or hurtful comments. Conduct that are severe or pervasive are measured by the totality of the circumstance of frequency, severity, whether the conduct is physically threatening or humiliating versus "mere offensive utterance;" or whether the conduct unreasonable interferes with work performance. See Harris v. Forklift Sys., Inc. 510 U.S. 17 (1993).

51. An employer will be automatically liable for harassment by a supervisor that harassment resulted in termination, or failure to promote/hire, or loss of wages, for the employee that was harassed. In addition, t if the supervisor's harassment results in a hostile work environment, the employer has the burden to prove that: 1) it reasonably tried to prevent and promptly correct the

harassing behavior; and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.

52. Plaintiff begins with a presumption for sexual harassment claim for both hostile work environment based on his termination after rebutting his supervisor's sexual touching. In accordance with Title VII, the employer has the burden of rebutting the presumption of a prima facie case.

53. Here, Defendant will be unable to meet its burden for hostile work environment, based on the facts of this case. With respect to the nature and gravity of the offense, the following facts are undisputed:

1) Plaintiff was touched on his buttock by his Direct Supervisor.

2) Plaintiff told his Direct Supervisor that he did not like that type of offensive touching.

3) The Direct Supervisor engaged in an argument after the unwanted touch was rebutted.

4) Plainitff was fired shortly after rebutting the supervisor's unwanted touch.

5) The reason for the termination was baseless and also a part of Plainitff's job description of picking peppers.

6) Plaintiff was forcefully pushed by his Direct Supervisor and removed from field when he was trying to ask why he was terminated.

54. The time frame also supports Plaintiff's claim. The termination and the rebuttal of the unwanted touch on the buttocks occurred within the same day. This also creates a nexus between the harassment and the sudden termination.

55. Finally, the nature of the job held by Plaintiff does not support his termination.

56. Given the description of his job to pick peppers and discard those that look abnormal or diseased, Plaintiff was doing his job as he had done since he was hired on August 1, 2020.

57. In conclusion, Plaintiff's sudden termination from his employment was based on his rebuttal of his Direct Supervisor's unwanted touching of his buttocks and not because of throwing away too much pepper. Resultingly, the proffered reason for termination is a pretense for retaliation against Plaintiff's rejection of the Direct Supervisor's sexual advances. Plaintiff has a valid discrimination claim under Title VII of the Civil Rights Act based on the employer's creation of a Hostile Environment.

58. By firing Plaintiff as retaliation for his protected activity, Defendant discriminated against Plaintiff despite a promise in the contract not to discriminate "in any manner" against persons who engage in protected activity. *See id*.

## SECOND CAUSE OF ACTION

**Breach of Contract for Unlawful Termination and Retaliating Against Plaintiff for Activity Protected Under the Work Contract in Violation of Florida Common Law.**

59. Plaintiff incorporates each of the allegations contained in the preceding paragraphs.

60. The general rule of contract formation was enunciated by the Florida Supreme Court in St. Joe Corp. v. McIver, 875 So.2d 375, 381 (Fla. 2004). The basic requirements of a contract are offer, acceptance, consideration and sufficient specification of essential terms.

61. In the H-2A context, a job offer is "the offer made by an employer . . . describing all the terms and conditions of employment, including those relating to wages, working conditions, and other benefits." 20 C.F.R. § 655.103(b).

62. The contents of a job offer that H-2A employers must include when offering employment are listed at 20 C.F.R. § 655.122.

63. H-2A employers, including Defendant, are required to provide a copy of the proposed employment contract in a language the worker understands before the worker applies for his or her H-2A visa. 20 C.F.R. § 655.122(q).

64. In the absence of a separate employment contract that includes, at a minimum, all the same protections as the job offer, the job order serves as the work contract for H-2A workers. *See id.* 20 C.F.R. 655.122(q).

65. Included in the work contract is an assurance that the employer will "abide by the requirements" of the H-2A regulations and further assure prospective workers that it will meet the assurances and obligations at 20 C.F.R. § 655.135.

66. Included in the work contract is an assurance that the employer will "abide by the requirements" of the H-2A regulations and further assure prospective workers that it will meet the assurances and obligations at 20 C.F.R. § 655.135.

67. Some of the assurances required by H-2A employers are those found at 20 C.F.R. § 655.135(h)(1)–(5), which among other things, precludes "unfair treatment" such as blacklisting or otherwise discriminating against a worker who engages in protected activity  specifically, exercising or asserting his rights under the H-2A program, 20 C.F.R. § 655.135(h)(5).

68. Plaintiff had a right under the work contract to engage in protected activity without being discriminated against by Defendant for engaging in that protected activity. 20 C.F.R. § 655.135(h)(5).

69. Under paragraph 17(c) of the H-2A Agricultural Clearance Order Form ETA-790A the "Employer assures that all working conditions comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration, and other employment-related laws. 20 CFR 653.501(c)(3)(iii)." *See* Exhibit B, page 8.

70. Defendant knew Plaintiff engaged in protected activity by rejecting his Direct Supervisor's sexual touching and was terminated for his objection.

71. Defendant's retaliation against Plaintiff for engaging in protected activity breached the work contract and cost him H-2A employment for the 2020-2021 season.

## JURY DEMAND [IF APPLICABLE]

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

1. Makes a finding that this Court has jurisdiction over Plaintiff's claims;

2. Enter an order granting a jury trial on all issues so triable;

3. Enter declaratory judgment that Defendant violated Plaintiff's rights under the FLSA as set forth in the Claim for Relief;

4. Enjoining Defendant from further violations of the FLSA, and his rights under his employment contract;

5. Enter judgment awarding Plaintiff his respective unpaid minimum and promised wages plus pre- and post-judgment interest and an equal amount in liquidated damages;

6. Enter judgment awarding Plaintiff his actual damages for Defendant's breach of the employment contract plus pre- and post-judgment, as embodied in the job order as set forth in the Claim for Relief;

7. Enter judgment awarding the Plaintiff the costs of this action;

8. Enter judgment awarding the Plaintiff a reasonable attorneys' fees of this action pursuant to the FLSA, 29 U.SC. § 216; and

9. Granting such other relief as this Court deems just and appropriate.

Dated: March 19, 2021                                  Respectfully submitted,

| | |
|---|---|
| /s/ Gaelle Colas | _____ |
| Gaelle Colas, Esq. | Roberto Cruz, Esq. |
| Attorney Bar Number 116811 | Attorney Bar Number 18436 |
| Email Gaelle.Colas@frls.org | Email Roberto.Cruz@frls.org |
| Florida Rural Legal Services, Inc. | Florida Rural Legal Services, Inc. |
| 3210 Cleveland Ave Ste 101 | 1321 East Memorial Blvd. |
| Fort Myers, FL 33901-7182 | Lakeland, FL 33801 |
| Telephone: (888) 582-3410 | Telephone: (863) 688-7376 Ext. 3050 |
| Facsimile: (863) 583-8623 | Facsimile: (863) 583-8623 |
| | Attorneys for Plaintiff |

### Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by email on March 19, 2021 on all counsel or parties of record on the Service List below.

/s/ Roberto Cruz
Roberto Cruz, Esq.

### SERVICE LIST

David J Stefany, Esq.
Email dstefany@anblaw.com
Allen, Norton & Blue
324 S Hyde Park Ave.
Hyde Park Plaza, Suite 225
Tampa, FL 33606-4127
Tel.: (813) 251-1210
Fax.: (813) 253-2006
Attorneys for Defendant
Bailey Farms South, LLC